## Case No. 5,258.

### Ex parte GARWOOD.

### Ex parte POTTS.

[Crabbe, 516.][1]

District Court, E. D. Pennsylvania. Oct. 7, 1843.

**ACT OF BANKRUPTCY — PAYMENT BY INSOLVENT — SATISFACTION OF JUDGMENT—DISCHARGE.**

1. A payment made by an insolvent aware of his insolvency is not necessarily an act of bankruptcy; to make it so it must be with the intention of giving a preference.

2. Payment or satisfaction of a judgment obtained bona fide and without collusion, and on which execution may at once be issued, cannot be considered a voluntary payment in fraud of the bankrupt law, if by such payment the debtor is enabled to continue his business.

3. Pending a proceeding by creditors to have Potts and Garwood declared bankrupt, they

[1] [Reported by William H. Crabbe, Esq.]

instructed a foreign agent of theirs to remit funds to a particular creditor, to secure him from loss; the creditors' petition was dismissed —this fact not appearing—and subsequently the respondents thereto commenced voluntary proceedings to have themselves declared bankrupts, both individually and as members of the partnership: the court decided that the instructions to the foreign agent, though not obeyed by him, were in violation of the bankrupt law [5 Stat. 440], and therefore refused to discharge the petitioners, but a jury being demanded, the petitioners were decided by it to be entitled to their discharge, and were discharged accordingly.

These were petitions by George M. Garwood and by Percival M. Potts for certificates and discharges, both individually and as members of the firm of Potts and Garwood, they having voluntarily petitioned to be declared bankrupts. It appeared that while the proceedings were pending to declare the firm of Potts and Garwood bankrupts, and also subsequently to the dismissal of that petition [Case No. 11,344], these petitioners had satisfied several judgments on which they were liable to execution, and had taken up their notes which were endorsed by Richard D. Garwood. It also appeared that, on the 27th of May, 1842, a few days after the petition against the partnership had been filed, Garwood wrote, in the name of the firm, to one Kechmli, their agent at Rio Janeiro directing him to consign to the extent of $10,000 to Richard D. Garwood, as he had endorsed for the firm, and, under the bankrupt law, that was the only way to protect him. Kechmli did not obey these instructions, as he had nothing to consign. The letter was not copied into the letter-book of the firm, and was written without the knowledge or assent of Potts, but some days after it was sent its contents were communicated to him by Garwood, and it was often the subject of subsequent conversation between them.

Mr. McIlvaine, for opposing creditors.

The object of these petitioners throughout the whole of this business has been to protect Richard D. Garwood in the first instance, and to postpone the claims of all other creditors to his. They transferred to him the possession of the coffee belonging to them in New York, which transfer was the basis of the petition of Harley and Son heretofore dismissed by this court; they instructed their agent in South America, on the 27th of May, 1842, to take means to secure this preferred creditor; and, with a full knowledge of their insolvency and bankruptcy, they have purchased or taken up the notes on which he was endorser. The transfer of the bill of lading for the coffee was fully argued upon when these parties were last before this court, and it was then decided that such an intention for that transfer was not shown as would render it an act of bankruptcy. We think that other acts of these petitioners—now made apparent—show what the intention of that transfer really was. The letter to Kechmli of the 27th May, 1842, was, beyond a doubt, a flagrant fraud, and an act of bankruptcy, and its expressed intention

was to give a fraudulent preference. Whether Potts knew of that letter or not he had the means of knowing and was bound to know of it; Garwood swears that he did know of it; at least subsequently to its being sent; and on general principles, even if he did not know of it, one partner is civilly answerable for the acts of another done within the scope of his authority. That the purchases of the notes endorsed by Richard D. Garwood were made under a full knowledge of their insolvency, cannot be denied by the petitioners; their books show it, and their correspondence, even to the letter of 27th May, is full of it. We think, therefore, that these acts constitute such fraud in the petitioners as should prevent their discharge.

Mr. Macaulay, for Garwood.

To render a payment fraudulent under the second section of the bankrupt law it must have been in contemplation of bankruptcy, while all the payments here complained of were made under pressure and to gain an advantage. They paid the judgments to prevent execution and enable them to go on. As to the letter of 27th May, it contemplates not a breaking up of business but a continuance of it, and it is admitted nothing was sent to Richard D. Garwood in consequence of it.

W. B. Reed, for Potts.

There is nothing in evidence now which would have varied the decision of this court in the former case in July, 1842, at least so far as concerns Potts. That case decided that the transfer of coffee to Richard D. Garwood was not an act of bankruptcy, and that the transfers of bills of lading and policies of insurance to D. Smith, Jr. were legal. The only new facts of importance are the letter of 27th May, and the purchase of notes endorsed by Richard D. Garwood. As to the last, the debt was a bona fide one, and the transaction cannot be described as fraudulent; while for the letter Potts is wholly irresponsible, as he did not know of it till too late, and as one partner may commit an act of bankruptcy without compromising the other. Cary, Partn. 196, 197, 254 (5 Law Library).

J. Randall, for Garwood.

By the fourth section of the bankrupt law, every creditor who surrenders all his property is entitled to a discharge, except he fall within the prohibition of that and the second section, by making a fraudulent payment in contemplation of bankruptcy. But what a person's contemplation or intention is can never be shown by positive evidence, and is only to be presumed from circumstances and actions, and the burden of proof of such improper intention is in this case on the opposing creditors.

Mr. Randall then entered into a lengthy review of the evidence in the case, and then urged that, as the letter of 27th of May had never been carried into effect, even if it had

a fraudulent intention—which he denied—such intention alone, unaccompanied as it was by any effect or result, could not be such an act of fraud as to prevent a discharge.

Mr. Dallas, for opposing creditors, in reply.

This application is entitled to no favor; it is voluntarily made by debtors after they have disposed of all their property. Under the state laws there is no doubt but that these petitioners had a full right to prefer certain favored creditors as they have done, and, had they thought proper to do so, they might have contented themselves under those laws, but coming here to claim the privileges of the bankrupt law, they must satisfy its requirements. We, on the other hand, do not charge any criminal or moral fraud, but simply such actions as constitute a fraud under the bankrupt law, and there we think we have a right to stop, and to repudiate any obligation on us to show the intention of the acts we prove; from those acts but one design can be presumed, and that design a fraudulent one. Acts of fraud like these cannot be explained away. Insolvency is an inability to pay and meet engagements as they become due, and that was the condition of these petitioners when they called the meeting of their creditors in April, 1842; from that time they were fully aware of their position, and must have had the idea of failure and bankruptcy constantly before them. This fact should be borne in mind as we examine their various actions subsequent to that time. The letter of the 27th May, 1842, needs no reference to collateral facts to bring out its fraudulent character. It bears the brand on its face; it avows the intention to secure one creditor to the prejudice of others; and it throws great light on other and less manifestly fraudulent actions. But, it is said, we have no right to visit the consequences of this letter on Potts, as he did not know of it until it was too late; it is in evidence, however, that he knew of it very shortly after, that he never countermanded it, communicated it to the creditors, or in any way expressed his dissent or disapproval of it, and we also have it proved, that he positively assented to the purchase of the notes which Richard D. Garwood endorsed,—a transaction which was only another part of the general design to protect that favorite creditor. We think, therefore, that Potts has no right to throw off his responsibility for this letter; he, at least, subsequently ratified it; and such a subsequent ratification is equivalent to an original assent. Again, it is said that this letter was not carried into effect; but that does not render it any the less a fraud. It is undoubtedly a preference, undoubtedly made in contemplation of bankruptcy, and such transfers are declared frauds by the bankrupt law: not because they are valid and effective, for under that law they are expressly made void and of no effect. It is, therefore, no answer to the charge of fraud against this letter to say that it produced no effect; it produced as much ef-

fect as it possibly could when the bankrupt law declared it should have no effect at all. As to the purchase of the notes endorsed by Richard D. Garwood, it was a preference made, as we have seen, under full knowledge of insolvency and necessary contemplation of bankruptcy; it was therefore a fraudulent act of bankruptcy.

RANDALL, District Judge. I do not agree with the counsel for the opposing creditors that any payment made by a person who is insolvent, and aware of his insolvency, is to be considered as an act of bankruptcy, or as the giving a preference prohibited by the bankrupt law. Many persons, knowing they are insolvent and unable to meet their engagements, continue business in the expectation and hope that they will be able eventually to extricate themselves from debt, and in this they frequently succeed:—to hold that payments, made by a person under such circumstances, are fraudulent, would be to put an end to the exertions of an honest and enterprising debtor, who, finding himself suddenly overtaken by losses and disasters, is determined to devote his time and talents to a business which, he is confident, will, with industry, enable him to meet all the demands against him. To make such payments fraudulent they must be with the intention of giving a preference to the particular creditor, whether the debtor intends making application for the benefit of the bankrupt law or not. Neither do I agree that the payment or satisfaction of a judgment on which execution may be at once issued, can be considered as a voluntary payment, in fraud of the bankrupt law, if the judgment was obtained bona fide, and without collusion, if by such payment the debtor is enabled to continue his business. These views would seem to dispose of most of the exceptions urged against the discharge of the petitioners, if I have correctly viewed the evidence; but I have not examined it with as much care as I should have deemed it my duty to do had these been the only objections urged.

The petitioners were extensively engaged in commercial pursuits, and apparently in prosperous business, when, in the early part of 1842, they found themselves involved in the general prostration which then came over our business community. On the 27th of April of that year, being unable to meet their engagements, they called a meeting of their creditors, from whom they asked an extension of nine, twelve and fifteen months, which was generally agreed to; on the 14th of May, however, Harley and Son filed a petition in the district court, praying to have them declared bankrupts, and alleging, as an act of bankruptcy, a fraudulent conveyance and assignment of their goods and chattels, viz.: a certain quantity of coffee, to Richard D. Garwood, the father of one of these petitioners, and an endorser of their

notes, with a view to give him a preference over the other creditors. This application was subsequently dismissed. On the 13th of December, 1842, these petitioners made a voluntary assignment of all their property, for the benefit of their creditors, without preference; on the 21st, Garwood, and on the 23d, Potts, presented a petition for the benefit of the bankrupt law. During the pendency of Harley's petition, Garwood, in the name of the firm, wrote to Kechmli, their consignee in Rio, under date of the 27th May, 1842,—"The object of this letter is to request you to ship $10,000 under cover to Richard D. Garwood, as he is our endorser, and, under the bankrupt law, this is the only way we can secure him." It is admitted, and indeed could not be denied, that if this instruction had been carried into effect, it would have been fatal to the application of the petitioners. Does the failure make any difference?

The second section of the bankrupt law enacts, "that all future payments, securities, conveyances, or transfers of property, or agreements made or given by any bankrupt in contemplation of bankruptcy, and for the purpose of giving any creditor, endorser, surety, or other person any preference or priority over the general creditors of such bankrupt, and all other payments, securities, conveyances, or transfers of property, or agreements made or given by such bankrupt, in contemplation of bankruptcy, to any person or persons whatever, not being a bona fide creditor or purchaser for a valuable consideration, without notice, shall be deemed utterly void, and a fraud upon this act; and the assignee under the bankruptcy shall be entitled to claim, sue for, recover, and receive the same as part of the assets of the bankrupt; and the person making such unlawful preferences and payments shall receive no discharge under the provisions of this act." The only question then is whether this transfer was made in contemplation of bankruptcy, and for the purpose of giving a preference to an endorser, surety, or other person, over the general creditors. To determine that it was so it is only necessary to refer to the letter itself. The act of congress does not contemplate that the instrument giving the preference shall be valid and effective: on the contrary, it declares it shall be void, that the assignee in bankruptcy shall be entitled to the property so attempted to be transferred, and the assignor be denied a discharge. What difference then can it make whether the transfer is inoperative by act of law, or by the omission of the consignee to carry it into effect? The object of the law was to insure equality among all the creditors, and to punish any one who attempted to destroy that equality; not only by declaring his attempt to be void, but also by refusing him a certificate and discharge for making such an attempt. It is true that this letter was written by Garwood in the name of the firm, without the knowledge or consent of Potts, and was not entered in the letter book of the firm. If the evidence rested here I should hesitate to charge the consequences of it on Potts, but Garwood swears that, in a few days after it was sent, he communicated the contents of it to Potts, and that it was the subject of frequent conversations between them, and it is also in evidence that the notes on which Richard D. Garwood was endorser, have since been purchased with the funds of the firm, some of them certainly with the knowledge and, if not with the assent, without the disapprobation or dissent of Potts, while other creditors remained wholly unpaid. Although the acts complained of were perfectly legal and justifiable under the laws of Pennsylvania, yet, as the petitioners ask a benefit under the bankrupt law of the United States, and believing as I do their acts to be prohibited by that law, I cannot grant their discharge unless directed to do so by the verdict of a jury, or a decree of the circuit court, to either of which they, or either of them, may appeal.

Subsequently both the petitioners demanded a jury, and were by it decided to be entitled to their discharges.